## Thomas Estate

*James R. Donaldson*, for accountant.

*Samuel Goldfarb*, for claimant.

MARINO, P. J., June 29, 1966.—Kenneth B. Colteryahn is claimant, pressing a claim for rent against the estate of Clarence E. Thomas, deceased, who died April 6, 1964.

Mr. Colteryahn owned several tracts of land in the

vicinity of Burgettstown, Pa., totaling 855 acres. The farm in question is known as the Dunbar farm, containing 155 acres, and on which stood an 8-room house in which decedent, together with others, lived for many years prior to his death.

The parents of decedent originally leased the premises and were living there when the property was purchased by claimant. They occupied same by virtue of an oral lease with claimant, paying only $10 per month, and making certain repairs which were required. Said parents died about 15 years ago, and the children continued to live on the premises. There is no testimony as to how much rent, if any, they were paying, or who was the head of the household after the death of the parents.

Decedent and his brothers, John and Charlie, were all bachelors. There may have been a married sister and her family in part occupancy of the premises for a while, but the testimony is unclear on this point, as well as whom they regarded as the head of the household, if anyone.

During the lifetime of decedent, he was heard to say to Mr. Colteryahn that he, Colteryahn, could not put him off the premises. The argument between them was overheard by one Michael Duran. He got the impression that decedent was claiming he had been in occupancy for so long a time that Colteryahn could not put him out. The elder Colteryahn knew that his son (claimant) had raised the rent on the farm, but he did not know what the rental was supposed to be; this was while the parents were living.

Claimant makes claim for back rent for a number of years (possibly six) before the death of decedent and for four months after his death, as the executor turned the key for the home over to him on August 1, 1964. Claimant is faced with the predicament of being unable to testify (being incompetent under the so-called Dead Man's Act of May 23, 1887, P. L. 158) and hence being

unable to prove the terms of the oral lease, if any. He tries to avoid this impasse by claiming on a *quantum meruit* basis. But the problem is not so easily solved. Quantum meruit applies to contracts of employment, such as wages, care rendered decedent, nursing and similar services; we know of no case where quantum meruit has been invoked to fix the amount of rent which might be due. Even if it were, there would first have to be a contract of leasing, either written or oral. As was said in Wilson Estate, 349 Pa. 646, 649 : " 'The relation of landlord and tenant is always created by contract, either express or implied. It cannot exist without a contract. . . .' "

Claimant bases his right to recover rent wholly on an implied promise to pay for use and occupancy. The action for use and occupancy of land is founded upon privity of contract. He must prove either a contract to pay a stipulated compensation for the use of the property or such a sum as the use is reasonably worth.

Claimant's quandary is that, upon the death of the parents of Clarence E. Thomas, several bachelors remained in possession and occupancy. Who was then the lessee? We do not know. John died in 1962; who was then the lessee, similarly, we do not know. Not having established or presented any evidence of an agreement with regard to the occupation of the premises, claimant has failed to prove that element fundamental to the existence of a landlord and tenant relationship.

As to the claim for the rent after the death of decedent, the validity of same would depend upon whether the executor's occupancy was necessary for discharging the duties of his trust: Kemp's Estate, 34 Pitts. L. J. 82. The mere fact that he announced, when claimant's father asked him what his intentions were, that "Clarence died and they had one year to settle up the estate", does not fix liability on the estate in the absence of proof that such occupancy was necessary to dis-

charge his trust. There is no such proof. He may have become *personally liable* for so much of the rent accruing during this period as the premises were worth. We are not called upon to decide that issue.

On the facts of this case, we cannot attach liability to the estate for any rent whatever, either before death of decedent or afterward. See also Hallinan Estate, 37 Erie 64.

The claim of K. B. Colteryahn is refused and dismissed.